[Cite as *Smith v. Ohio State Univ.*, 2017-Ohio-8836.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Deanna Smith et al., | : | |
| Plaintiffs-Appellants, | : | No. 17AP-218 |
| | | (Ct. of Cl. No. 2015-00919) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| The Ohio State University, | : | |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on December 5, 2017

**On brief:** *Glancy Prongay & Murray LLP, Marc L. Godino,* and *Mark S. Greenstone*; *Kooperman Mentel Ferguson Yaross Ltd.,* and *Katherine C. Ferguson,* for appellants. **Argued:** *Mark S. Greenstone.*

**On brief:** *Vorys, Sater, Seymour and Pease LLP, Robert N. Webner,* and *Martha Brewer Motley*; *Michael DeWine,* Attorney General, *Lee Ann Rabe,* and *Randall W. Knutti,* for appellees. **Argued:** *Robert N. Webner.*

APPEAL from the Court of Claims of Ohio

LUPER SCHUSTER, J.

{¶ 1} Plaintiffs-appellants, Deanna Smith and Harmoni Sauder, appeal from a judgment of the Court of Claims of Ohio dismissing their claims against defendant-appellee, The Ohio State University ("OSU"), for lack of standing. For the following reasons, we affirm.

I. **Facts and Procedural History**

{¶ 2} In 2012, OSU hired Sauder as a facility manager, and, in 2014, OSU hired Smith as a housekeeper. In October 2015, appellants, individually and on behalf of a class of others similarly situated, filed suit against OSU under the Fair Credit Reporting Act

("FCRA"), 15 U.S.C. 1681, et seq.  Appellants alleged that as part of their application and hiring process, OSU provided a background check disclosure and authorization to each of them that improperly included extraneous information and a liability release in violation of 15 U.S.C. 1681b(b)(2)(A)(ii).

{¶ 3}   In November 2015, OSU removed the action to the United States District Court for the Southern District of Ohio, Eastern Division, based on federal question jurisdiction.  In June 2016, the federal court found that appellants failed to allege that they sustained any injury-in-fact due to OSU's alleged violations of the FCRA, and that they therefore lacked standing under Article III of the United States Constitution.  Consequently, the federal court remanded the matter to the Court of Claims pursuant to 28 U.S.C. 1447(c).

{¶ 4}   In July 2016, OSU moved to dismiss the action in the Court of Claims based on its contention that, as in federal court, appellants lacked standing to bring their claims in Ohio state court because they alleged no injury-in-fact resulting from the alleged violations of the FCRA.  In response, appellants argued that Ohio law recognizes standing even in the absence of an injury-in-fact, when that standing is conferred by statute.  In February 2017, the Court of Claims dismissed appellants' claims against OSU based on its conclusion that they failed to plead any particularized injury-in-fact and lacked statutory standing to pursue their claims in the absence of a cognizable injury.

{¶ 5}   Appellants timely appeal.

## II.  Assignment of Error

{¶ 6}   Appellants assign the following error for our review:

> The Court of Claims committed reversible error in holding that Appellants lack standing to sue for the FCRA violations alleged by Appellants.

## III.  Discussion

{¶ 7}   In their sole assignment of error, appellants assert that the trial court erred in dismissing their FCRA claims against OSU for lack of standing.  Appellants argue that the FCRA conferred standing on them to sue for violations of the requirements contained therein.  According to appellants, this "statutory standing" exists regardless of whether they could otherwise meet the traditional or common-law requirements of standing,

including the necessity of alleging an injury-in-fact. Thus, appellants reason that the FCRA conferred standing on them to sue in Ohio state court, even without them alleging any harm beyond the violation of FCRA procedural requirements. We disagree.

{¶ 8} Pursuant to Article IV, Section 1 of the Ohio Constitution, the "judicial power of the state is vested in a supreme court, courts of appeals, courts of common pleas and divisions thereof, and such other courts inferior to the Supreme Court as may from time to time be established by law." Article IV, Section 4(B) of the Ohio Constitution provides that the "courts of common pleas and divisions thereof shall have such original jurisdiction over all justiciable matters and such powers of review of proceedings of administrative officers and agencies as may be provided by law." The Ohio Constitution does not contain a similar provision regarding the Court of Claims. Further R.C. Chapter 2743, which established the Court of Claims, does not contain language expressly stating that the court has the power to hear "justiciable matters." However, it is implicit in the Court of Claims' constitutionally granted "judicial power" that it only has the power to decide matters capable of being resolved in court.

{¶ 9} Standing to sue is part of the common understanding of what makes a case justiciable and is considered a "jurisdictional requirement." *Fed. Home Loan Mtge. Corp. v. Schwartzwald*, 134 Ohio St.3d 13, 2012-Ohio-5017, ¶ 21-22. "It is fundamental that a party commencing litigation must have standing to sue in order to present a justiciable controversy." *Id.* at ¶ 41. Thus, "[b]efore an Ohio court can consider the merits of a legal claim, the person or entity seeking relief must establish standing to sue." *Ohio Pyro, Inc. v. Ohio Dept. of Commerce, Div. of State Fire Marshal*, 115 Ohio St.3d 375, 2007-Ohio-5024, ¶ 27; *see Moore v. Middletown*, 133 Ohio St.3d 55, 2012-Ohio-3897, ¶ 23 ("It is well settled that standing does not depend on the merits of the plaintiff's contention that particular conduct is illegal or unconstitutional. Rather, standing turns on the nature and source of the claim asserted by the plaintiffs."). Whether a party has established standing to bring an action before the court is a question of law reviewed de novo on appeal. *Cuyahoga Cty. Bd. of Commrs. v. State*, 112 Ohio St.3d 59, 2006-Ohio-6499, ¶ 23.

{¶ 10} Ohio courts are not bound by federal standing principles derived from Article III of the United States Constitution's "cases" and "controversies" requirement. *Leppla v. Sprintcom, Inc.*, 156 Ohio App.3d 498, 2004-Ohio-1309, ¶ 30 (2d Dist.), citing

Article III, Section 2, U.S. Constitution.  However, Ohio courts generally adhere to the traditional principles of standing that "require litigants to show, at a minimum, that they have suffered '(1) an injury that is (2) fairly traceable to the defendant's allegedly unlawful conduct, and (3) likely to be redressed by the requested relief.' " *ProgressOhio.org, Inc. v. JobsOhio*, 139 Ohio St.3d 520, 2014-Ohio-2382, ¶ 7, quoting *Moore* at ¶ 22, citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *see State ex rel. Walgate v. Kasich*, 147 Ohio St.3d 1, 2016-Ohio-1176, ¶ 23 ("The test for Article III standing, like the test for common-law [standard] in Ohio, requires an injury in fact, causation, and redressability.").    These three requirements are considered the " 'irreducible constitutional minimum' " of standing.  *Moore* at ¶ 22, quoting *Lujan* at 560.

{¶ 11} Although not dispositive of the standing issue presented here, the United States Supreme Court's recent decision in *Spokeo, Inc. v. Robins*, ___U.S.___, 136 S.Ct. 1540 (2016), is instructive.  In *Spokeo*, the Court analyzed the minimum requirements of standing in federal court in the context of a FCRA case and reaffirmed the principle that Congress may not confer standing in the absence of an alleged particularized and concrete injury-in-fact.  The Court acknowledged the role of Congress to "identify intangible harms that meet minimum Article III requirements," and thus "its judgment is also instructive and important" regarding the issue of standing.  *Spokeo* at 1549.  Consequently, Congress "may 'elevat[e] to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate in law.' "  *Spokeo* at 1549, quoting *Lujan* at 578.  Stated differently, " 'Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before.' "  *Spokeo* at 1549, quoting *Lujan* at 580.  However, the Court in *Spokeo* emphasized that the power of Congress is limited by the injury-in-fact requirement of Article III.  *Id.* at 1547-48.  Thus, for there to be standing under Article III, there must be a "concrete injury even in the context of a statutory violation."  *Id.* at 1549.  In some circumstances, "the violation of a procedural right granted by statute can be sufficient * * * to constitute injury in fact."  *Id.* However, in the context of the FCRA, a "violation of one of the FCRA's procedural requirements may result in no harm."  *Id.* at 1550.

{¶ 12} Here, appellants rely on the concept of "statutory standing" as the basis for the Court of Claims' jurisdiction to hear their FCRA claims against OSU.  Appellants

assert that Ohio courts have consistently found standing to exist where the text of a statute provides a party with a cause of action to sue for a violation of its requirements, even in the absence of an alleged injury-in-fact. The FCRA provides that "any consumer" may bring an action in "any * * * court of competent jurisdiction" against "any person" who willfully fails to comply with "any requirement imposed" under the FCRA. 15 U.S.C. 1681n(a) and 1681p. Appellants argue that this statute conferred standing on them to sue OSU, regardless of whether they alleged any injury-in-fact.

{¶ 13} "Statutory standing" in Ohio has been described as the statutory grant of authority to sue. *Wooster v. Enviro-Tank Clean, Inc.*, 9th Dist. No. 13CA0012, 2015-Ohio-1876, ¶ 12. The Supreme Court of Ohio has indicated that, in addition to standing authorized by "common-law," which requires injury-in-fact, causation, and redressability, "standing may also be conferred by statute." *ProgressOhio.org, Inc.* at ¶ 17, citing *Middletown v. Ferguson*, 25 Ohio St.3d 71, 75 (1986); *State ex rel. Walgate* at ¶ 23; *see State ex rel. Mason v. State Emp. Relations Bd.*, 133 Ohio App.3d 213, 217 (10th Dist.1999) (common-law standing principles were not required because the Ohio General Assembly conferred standing on "any person" seeking to enforce Ohio's Sunshine Law under R.C. 121.22). For a statute to confer standing in the absence of a concrete injury, the statute must "clearly express[] an intention to abrogate the common-law requirements for standing." *ProgressOhio.org, Inc.* at ¶ 22. Under this framework outlined in *ProgressOhio.org, Inc.*, the "common-law" standing requirements must be established unless the party is suing pursuant to a statute that expresses a clear intent to abrogate those requirements.[1]

{¶ 14} Thus, Ohio and federal law have diverged on the issue of whether a party may have standing to sue in the absence of an injury-in-fact. However, even though Ohio

---

[1] Application of the "statutory standing" concept, as an exception to Ohio's common-law standing requirements, appears to have originated in *Middletown v. Ferguson*, 25 Ohio St.3d 71 (1986). In *Middletown*, the Supreme Court of Ohio stated that, "[a]s the United States Supreme Court has recognized," standing is not limited to common-law standing, but "may also be conferred by a specific statutory grant of authority." *Id.* at 75, citing *Sierra Club v. Morton*, 405 U.S. 727, 731-32 (1972). However, the *Middletown* court's reliance on the *Sierra Club* decision for this proposition of law ultimately has proven to be misplaced in view of the *Spokeo* decision. Thus, the continued viability in Ohio of "statutory standing" as an exception to Ohio's common-law standing requirements is questionable. Nonetheless, any full reexamination of the application of this doctrine in Ohio in view of the *Spokeo* decision is unnecessary in this case because application of that doctrine here would require us to expand it to federal legislation, which, for the reasons discussed below, we are unwilling to do.

courts have, in some circumstances, found standing despite no allegation of concrete injury, appellants fail to cite, and our independent research does not reveal, any case in which an Ohio court has analyzed and found standing to exist on the basis of a federal statute despite the absence of an alleged injury-in-fact. To the extent the "statutory standing" doctrine constitutes an exception to the traditional principles of standing in Ohio, we decline to extend that exception to this circumstance involving the application of a federal statute. To find statutory standing here under the standard expressed in *ProgressOhio.org, Inc.*, we would need to find that Congress intended to abrogate the Ohio common-law requirements to establish standing. However, there is no indication that Congress intended the pertinent FCRA statute to supplant the traditional requirements of standing in Ohio state court. Further, such a finding would be improper as it would permit Congress to affect the parameters of standing in Ohio courts, even though it is well-settled that Ohio law determines standing in Ohio courts. Expanding Ohio's statutory standing doctrine based on Congressional action would be particularly problematic considering determinations regarding the outer limits of standing implicate issues regarding the constitutional authority of Ohio's judiciary and the separation of power between the branches of government. Lastly, permitting Congress to abrogate Ohio common-law standing principles, even though Congress cannot abrogate essentially the same principles in federal courts, would constitute a significant anomaly.

{¶ 15} For these reasons, we find that the trial court correctly found that appellants lacked standing to sue OSU for its alleged violations of FCRA procedural requirements. Accordingly, we overrule their sole assignment of error.

## IV. Disposition

{¶ 16} Having overruled appellants' sole assignment of error, we affirm the judgment of the Court of Claims of Ohio.

*Judgment affirmed.*

TYACK, P.J., and BROWN, J., concur.

———————————